UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SYLVESTER SANFORD TATUM,<br><br>Petitioner,<br>v.<br>D.W. NEVEN, et al.,<br><br>Respondents. | Case No. 2:14-cv-01280-JCM-GWF<br><br>ORDER |

This *pro se* 28 U.S.C. § 2254 habeas petition filed by Sylvester Sanford Tatum comes before the court for disposition on the merits (ECF No. 7).

**I.     Procedural History and Background**

As this court has previously set forth in the order granting in part the motion to dismiss, on October 28, 2010, a jury convicted Tatum of one count of trafficking in a controlled substance and one count of possession of a controlled substance (exhibit 46 to respondents' motion to dismiss, ECF No. 10).[1] The state district court sentenced Tatum to ten to twenty-five years for the trafficking count and twelve to thirty-two months for the possession count, to run concurrently. *Id.* Judgment of conviction was filed on November 1, 2010. *Id.*[2]

The Nevada Supreme Court affirmed the convictions on October 5, 2011, and remittitur issued on November 1, 2011. Exhs. 65, 67, 68. The Nevada Supreme Court

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 10, and are found at ECF Nos. 11-17.

[2] An amended judgment of conviction entered on August 15, 2012, corrected a clerical error to reflect that Tatum was convicted pursuant to a jury trial and not a guilty plea. Exh. 83.

1

affirmed the state district court's denial of Tatum's first state postconviction petition on June 12, 2014, and remitittur issued on July 9, 2014. Exhs. 77, 108, 124, 135, 136. The state district court denied Tatum's second postconviction petition, and the Nevada Court of Appeals affirmed the denial on February 24, 2015. Exhs. 132, 147, 160.

Tatum failed to indicate the date he dispatched his federal petition for mailing, but he signed the petition on July 31, 2014 (ECF No. 7). Respondents now answer the remaining claim, ground 2(B) (ECF No. 33). Tatum did not file a reply.

## II. Legal Standards & Analysis

### a. AEDPA Standard of Review

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing

2

the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate

3

panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

4

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

**Ground 2(B)**

Tatum contends that his Sixth and Fourteenth Amendment rights to effective assistance of counsel were violated (ECF No. 7, pp. 39-42). He asserts that trial counsel failed to communicate to him a plea offer that the State extended before trial and that appellate counsel failed to raise the issue on appeal.

In *Frye v. Missouri*, 566 U.S. 134, 147-148 (2012), the Supreme Court held that, generally, defense counsel has a duty to communicate formal plea offers from the State "on terms and conditions that may be favorable to the accused." To show prejudice, a defendant must demonstrate a reasonable probability that he would have accepted the plea had he been afforded effective assistance of counsel and that "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time" (*i.e.*, defendant must show a reasonable probability that the State would not have withdrawn the offer and that the trial court would not have refused to accept it). *Id. See also Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

The state district court conducted an evidentiary hearing on the state postconviction petition that was limited to this one issue. Exh. 94. Tatum's defense counsel, Kirk Kennedy, testified as follows. *Id.* at 4-29. Kennedy had some conversations with the district attorney, David Schubert, but he could not recall a specific, written offer for a low-level trafficking deal, nor did he find one when he looked back through his file. At some point during trial, he had an exchange with Schubert and Schubert mentioned something like well you should have taken the 1 to 6 years that I offered. Kennedy was speaking with Tatum and referenced Schubert's comment to Tatum. Tatum grew upset and seemed to have been unaware of the offer; he said he would have taken the offer. Kennedy did not recall clearly but there may have been an offer just before trial. He did not recall relaying any offer to Tatum just before trial and stated that Tatum was "very firm" about wanting to go to trial. Kennedy recalled some offers to plead to high-level and mid-level drug trafficking charges and recalled that Tatum was not interested in those. Kennedy could not recall an offer to plead to a low-level charge. In response to questioning by the court, Kennedy testified that he had no independent recollection that the State proffered a low-level trafficking plea offer. *Id.* at 21.

Assistant district attorney Schubert had passed away prior to the evidentiary hearing. Jay Raman, the assistant district attorney who tried the case with Schubert, testified as follows. *Id.* at 30-40. Raman recalled a conversation between Schubert and Kennedy on the eve of trial. At that time the State offered a deal in the mid or max-level given the large of amount of drugs involved. In response to the offer Kennedy said that Tatum did not want any deals. Raman became involved in the case closer to trial, and no low-level offer was made once he was on the case. In his view they had a very strong case, including based on Tatum's calls from jail to his co-defendant telling him where the drugs were in Tatum's backyard and directing him to dig them up, and the subsequent police search pursuant to a warrant of the backyard, which yielded about two kilos of cocaine. Raman assessed before trial that a high-level trafficking conviction

7

was likely, and he never would have made a low-level offer in the case. A conversation occurred in court, probably at calendar call, in which Schubert and Kennedy confirmed that Tatum would not take a "max on mid-level" offer, which would have been six to fifteen years. To Raman's recollection, Schubert never told him that he ever made a low-level offer to Tatum. Raman stated that he thought he was always present when Schubert and Kennedy spoke during trial breaks, and he never remembers anyone talking about a low-level trafficking deal.

The state district court denied the postconviction petition, finding that Kennedy and Raman were credible witnesses. Exh. 108, p. 4. At the close of argument, the court stated that the evidentiary hearing made it clear that no low-level offer was made. Exh. 101, p. 5. The court observed: "whether or not a comment – a posturing comment made by a prosecutor in the heat of trial, possibly even made for mind-game playing in the middle of trial, is to now suddenly be taken as there was a formal offer made that was not communicated, I just don't see that we have any evidence of that." *Id.* In its written order, the court found: "[b]ased on counsels' testimony, it does not appear that the State ever made the plea offer Defendant alleges. As the plea offer did not exist, Mr. Kennedy was not ineffective for failing to convey it." *Id.*

In its order affirming the denial of the state postconviction petition, the Nevada Supreme Court explained:

> The district court conducted an evidentiary hearing during which trial counsel testified that he believed that the State offered a plea to a low-level trafficking offense shortly before trial, but counsel could not specifically recall the offer. Counsel did not discuss the offer with Tatum at the time of the offer. An assistant district attorney testified that he did not recall such an offer being made shortly before trial. Based on the testimony, the district court found that the State never made the alleged offer. The district court's factual findings are supported by substantial evidence. *Riley v. State*, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994) (affording deference to district court's factual findings that are supported by substantial evidence). Tatum failed to meet his burden of demonstrating that counsel received an offer from the State that he failed to convey to Tatum. *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004) (requiring proponent of ineffective assistance of counsel claim

8

prove allegations by a preponderance of the evidence); *see Missouri v. Frye*, 566 U.S. _, _, 132 S. Ct. 1399, 1409 (2012) (to demonstrate ineffective assistance of counsel from failure to communicate plea offer, proponent must show counsel failed to communicate offer and that client would have accepted offer).

Exh. 135, p. 3. The Nevada Supreme Court also pointed out that the claim that appellate counsel was ineffective for failing to raise this trial IAC claim lacked merit because the state supreme court normally declines to consider IAC claims on direct appeal. *Id.* at 2.

Tatum did not file a reply in support of his petition. Appellate counsel does not have a constitutional obligation even to raise every nonfrivolous issue, *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and appellate counsel certainly has no constitutional obligation to raise a trial IAC claim on direct appeal to a state supreme court that generally does not entertain such claims on direct appeal. With respect to Tatum's trial IAC claim, he certainly has not presented anything to rebut the presumption that the state court's factual determinations were correct. 28 U.S.C. § 2254(e)(1). He has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief as to ground 2(B) is denied. The petition, therefore, is denied in its entirety.

### III.     Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

9

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id*.

Having reviewed its determinations and rulings in adjudicating Tatum's petition, the court finds that none of those rulings meets the *Slack* standard.  The court therefore declines to issue a certificate of appealability for its resolution of any of Tatum's claims.

**IV.    Conclusion**

**IT IS THEREFORE ORDERED** that the petition (ECF No. 7) is **DENIED** with prejudice in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment and close this case.

DATED: March 26, 2018.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE